IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

DANE A. HAGEMEIER,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C14-2051

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION .................................... 2

II.   PRINCIPLES OF REVIEW ............................ 2

III.  FACTS ........................................... 4
    A.   Hagemeier's Education and Employment Background .......... 4
    B.   Administrative Hearing Testimony ...................... 4
        1.   Hagemeier's Testimony ......................... 4
        2.   Vocational Expert's Testimony .................... 5
    C.   Hagemeier's Medical History ........................ 6

IV.  CONCLUSIONS OF LAW ............................. 10
    A.   ALJ's Disability Determination ...................... 10
    B.   Objections Raised By Claimant ...................... 13
        1.   Dr. Piburn's Opinions ........................ 13
        2.   Credibility Determination ...................... 16
        3.   RFC Assessment ............................ 20

V.   CONCLUSION ................................... 22

VI.  ORDER ....................................... 23

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Dane A. Hagemeier on August 18, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title XVI supplemental security income ("SSI") benefits.[1]  Hagemeier asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him SSI benefits.  In the alternative, Hagemeier requests the Court to remand this matter for further proceedings.

# II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g).  42 U.S.C. § 1383(c)(3).  42 U.S.C. § 405(g) provides the Court with the power to:  "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ."  *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole."  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted).  Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'"  *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

---

[1] On October 20, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have

decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Hagemeier's Education and Employment Background

Hagemeier was born in 1989. He completed the twelfth grade in school. In accordance with Social Security regulations, the ALJ determined that Hagemeier has no past relevant work; however, the record demonstrates that on several occasions, he worked part-time for Goodwill Industries.

### B. Administrative Hearing Testimony

#### 1. Hagemeier's Testimony

At the administrative hearing, Hagemeier's attorney inquired whether Hagemeier was currently employed. Hagemeier responded that he was working part-time at the "People's Clinic" through Goodwill Industries. He stated that he worked approximately 15 hours per week in a group setting. Hagemeier's attorney and Hagemeier had the following colloquy regarding his job:

> Q:    Do you like the job?
> A:    I, what do you mean? Like do I --
> Q:    Like the job.
> A:    I don't mind the work, but I don't like being at the job.
> Q:    Why?
> A:    I just, I just can't. It's hard for me to focus on it. Like I'm just thinking about, you know, like before I go there the whole day I won't want to go there. Then when I get there all I want to do is go home. And then when I get home I just don't really have anything to do and I've just got to go to bed and that depresses me. And I think mainly it might be because of the time and I'm just, I don't know if it's my physical condition or whatever, but I just can't.

4

| | |
|---|---|
| Q: | Do you have any problems performing the job? |
| A: | No, I don't. Well, other than -- it's like when I get distracted it makes it, it makes it harder to, to want to do the [job,] . . . but it's not within my control. . . . |
| Q: | Do you get along with other people in the job? |
| A: | I get along with my supervisors, but well, there's a main supervisor. Her name is Carrie. And then there's other ones that I get along with most of them. But most of the people I work with I don't usually talk to, but I mean I haven't had any problems with them. |
| Q: | Do you think you can do the job full time? |
| A: | No, I don't. |
| Q: | Why not? |
| A: | Because at this point I'm having trouble doing what I'm doing right now. |
| Q: | What is that trouble? |
| A: | Just, I just feel like it's just too much. It's just too much. It disrupts my, my like internal schedule. You know, like I like to relax, but often times when I'm relaxed, you know, I'm thinking about a lot of things that I can't, I'm not able to do. And when I'm there I feel like it's just kind of putting like a, a roadblock in that. |

(Administrative Record at 40-41.)

Hagemeier further testified that in general, he did not believe he could work a full-time job due to his mental health difficulties. According to Hagemeier, he suffers from depression, anxiety, stress, attention and focus problems, and social phobia. Hagemeier stated that various medications help lessen the effects of his mental health issues. He claimed no side effects from the medication.

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided the vocational expert with a hypothetical for an individual who has:

> No exertional limitations. Would need a lower stress level job. Would require a job with no contact with the general

> public, limited contact with fellow workers. [The individual]
> would be limited to more than routine tasks, but less than
> complex tasks.

(Administrative Record at 55.) The vocational expert testified that under such limitations,
Hagemeier could perform the following unskilled jobs: (1) hand packager,
(2) laborer/warehouse worker, and (3) industrial cleaner. The ALJ provided the vocational
expert with a second hypothetical:

> [The individual would have n]o exertional limitations. Would
> need a low stress level such as four with ten being the most
> stressful and one being the least. Would be limited to . . .
> more than routine tasks but less than complex. . . . [W]ould
> prefer a job with no contact with the general public and limited
> contact with fellow workers. Due to drug and alcohol
> addiction, [the individual] would . . . miss three or more days
> of work.

(Administrative Record at 56.) The vocational expert testified that under such limitations,
Hagemeier would be precluded from competitive employment.

## C. Hagemeier's Medical History

On July 14, 2009, Dr. Sandra Davis, Ph.D., reviewed Hagemeier's medical records
and provided Disability Determination Services ("DDS") with a Psychiatric Review
Technique and mental residual functional capacity ("RFC") assessment for Hagemeier.
On the Psychiatric Review Technique assessment, Dr. Davis diagnosed Hagemeier with
depressive disorder, social phobia, anxiety disorder, cannabis abuse, cocaine abuse, and
polysubstance abuse. Dr. Davis determined that Hagemeier had the following limitations:
mild restriction of activities of daily living, moderate difficulties in maintaining social
functioning, and moderate difficulties in maintaining concentration, persistence, or pace.
On the mental RFC assessment, Dr. Davis found that Hagemeier was moderately limited
in his ability to: carry out detailed instructions, maintain attention and concentration for
extended periods, sustain an ordinary routine without special supervision, work in

coordination with or proximity to others without being distracted by them, complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, maintain appropriate social behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Davis concluded that:

> [Hagemeier] has had at least one inpatient hospital episode relative to threats of self-harm. He has completed a 5-week substance abuse treatment. His use of substances appears more extensive than that reported to various people, at least back in March. He would appear capable of following simple instructions. He would do best in a setting where his interactions with others are minimal and superficial. He may be uncomfortable dealing with great numbers of people. His hygiene and grooming may not be up to real high standards. Part of his problem in finding work has been his refusal to submit to pre-employment drug test.

> The medical evidence is relatively consistent. The credibility of [Hagemeier's] allegations is partially eroded in that he has used drugs more extensively than reported.

(Administrative Record at 379.)

On December 1, 2010, at the request of DDS, Hagemeier met with Dr. Carroll D. Roland, Ph.D., for a psychological evaluation. In discussing Hagemeier's "presenting problem," Dr. Roland noted that "[Hagemeier] reports that he is unable to secure and maintain full-time employment secondary to, 'anxiety . . . stress . . . I think things will play out in a negative way . . . that affects my motivation.'"[2] Dr. Roland further noted that Hagemeier "has not sought employment in the last several months and shows a low

---

[2] Administrative Record at 486.

motivation for employment."[3] Dr. Roland indicated that Hagemeier's typical day consisted of sitting around and trying to relax. Specifically, Dr. Roland reported that Hagemeier "will get on his computer, watch tv or listen to music. He has a driver's license. He does not do his own shopping, only occasionally will do domestic chores, does not do his own laundry but is capable of preparing simple meals."[4] Upon examination, Dr. Roland found that Hagemeier's memory was intact for recent and remote events. Dr. Roland opined that Hagemeier has the ability to remember 2 and 3-step instructions given by a supervisor. The Beck Depression Inventory-II was administered, and Hagemeier's score was consistent with a diagnosis of depressive disorder. Dr. Roland opined that "the depth of depression does not preclude employment."[5] Dr. Roland diagnosed Hagemeier with social phobia, depressive disorder, and personality disorder with avoidant and dependent features. Dr. Roland concluded that:

> There are multiple indications of a Personality Disorder NOS with avoidant and dependent features. [Hagemeier] admittedly does not like to have people tell him what to do and has quit 2 entry level positions within 3 days of being hired. Yet he does not take any responsibility for carrying out normal [activities of daily living] because, "[his parents] don't tell me what they want me to do." [Hagemeier] is clearly unmotivated for employment and is in need of ongoing cognitive-behavioral therapy. Memory and intellect are sufficient for employment purposes.

(Administrative Record at 490.)

On December 17, 2010, Dr. Beverly Westra, Ph.D., reviewed Hagemeier's medical records and provided DDS with a Psychiatric Review Technique and mental RFC

---

[3] *Id.* at 488.

[4] *Id.*

[5] Administrative Record at 489.

assessment for Hagemeier. Dr. Westra diagnosed Hagemeier with depressive disorder, social phobia, personality disorder, and history of polysubstance abuse. Dr. Westra determined that Hagemeier had the following limitations: moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Westra found that Hagemeier was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain appropriate social behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Westra also opined that Hagemeier was markedly limited in his ability to interact with the general public. Dr. Westra concluded that:

> The [medical evidence of record] does reflect some self-consciousness but no real social phobia. He goes to a friend's house to avoid his mother. He will do some mowing and laundry at home, but helps out infrequently. . . . He does have severe impairments, but his primary difficulty is low motivation to work[.] . . . He is capable of simple, routine tasks, and perhaps some detailed ones if he were so motivated. He would not do well interacting with the public but can manage superficial interaction in a work setting, if it is in his best interest to do so. Credibility is partly eroded by refusal to comply with the recommendations and services offered to him.

(Administrative Record at 507.)

On August 15, 2012, at the request of Hagemeier's attorney, Dr. Marvin F. Piburn, M.D., Hagemeier's treating psychiatrist, filled out a "Questionnaire as to Mental Health Residual Functional Capacity" for Hagemeier. Dr. Piburn diagnosed Hagemeier with mood disorder, primarily irritable depression; complex mixed anxiety, including general anxiety, panic attacks, and social phobia; oppositional defiant disorder; relational problems related to mental disorders; personality disorder with avoidant and noncompliant tendencies; and cannabis and cocaine abuse, in remission since spring 2009, with a relapse in 2012. Dr. Piburn also noted that in the past, Hagemeier was prescribed Adderall for ADHD and fatigue. Dr. Piburn opined that Hagemeier had "extreme" limitations in the ability to: relate to other people, attend meetings, work around the house, and socialize with friends and neighbors, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted by them, complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in a routine work setting. Dr. Piburn also determined that Hagemeier had marked limitations in the ability to: maintain attention for extended periods of two-hour segments, maintain regular attendance and be punctual within customary tolerances, and make simple work-related decisions. Lastly, Dr. Piburn opined that "[s]ubstance use not a factor for 3 years and never was the primary cause of illness."[6]

---

[6] Administrative Record at 534.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Hagemeier is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the

> fourth step asks whether the claimant has the residual
> functional capacity to do past relevant work. If so, the
> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Hagemeier had not engaged in substantial gainful activity since August 17, 2010. At the second step, the ALJ concluded from the medical evidence that Hagemeier had the following severe impairments: mood disorder, complex mixed anxiety (generalized, panic/phobic, and social), history of cannabis and cocaine abuse, mixed personality disorder, relational problems, and body dysmorphic traits. At the third step, the ALJ found that Hagemeier did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Hagemeier's RFC as follows:

[Hagemeier] has the residual functional capacity to perform a
full range of work at all exertional levels but with the
following nonexertional limitations: he would need a lower
stress level job; he would require a job with no contact with
the general public and limited contact with fellow workers; and
he would be limited to more than routine tasks but less than
complex tasks.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that
Hagemeier had no past relevant work. At the fifth step, the ALJ determined that based on
his age, education, previous work experience, and RFC, Hagemeier could work at jobs
that exist in significant numbers in the national economy. Therefore, the ALJ concluded
that Hagemeier was not disabled.

### B. Objections Raised By Claimant

Hagemeier argues that the ALJ erred in three respects. First, Hagemeier argues
that the ALJ failed to properly evaluate the opinions of his treating psychiatrist,
Dr. Piburn. Second, Hagemeier argues that the ALJ failed to properly consider his
subjective allegations of disability. Lastly, Hagemeier argues that the ALJ's RFC
assessment is flawed because the record was not fully and fairly developed, and it is not
based on substantial evidence in the record.

### 1. Dr. Piburn's Opinions

Hagemeier argues that the ALJ failed to properly evaluate the opinions of his
treating psychiatrist, Dr. Piburn. Specifically, Hagemeier argues that the ALJ failed to
properly weigh Dr. Piburn's opinions. Hagemeier also argues that the ALJ's reasons for
discounting Dr. Piburn's opinions are not supported by substantial evidence in the record.
Hagemeier concludes that this matter should be remanded for further consideration of
Dr. Piburn's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating
physicians' opinions are inconsistent with substantial evidence of the record." *Travis v.*

13

*Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve

conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed the opinions of Dr. Piburn as follows:

> [T]he undersigned has considered the opinion evidence consisting of a checklist submitted by [Hagemeier's] treating psychiatrist in August 2012. . . . Contrary to treatment notes indicating that [Hagemeier] had recently been arrested for possession of illicit substances, Dr. Piburn noted that, "Substance use not a factor for 3 years and never was the primary cause of illness." (Exhibit 21F[.]) Because the opinion provided by [Hagemeier's] treating psychiatrist was inconsistent with the longitudinal medical findings of record and with the psychiatrist's own treatment records, the undersigned has afforded the opinion little weight. More specifically, treatment notes during their last session of record failed to support the functional limitations opined by the psychiatrist. Of note, during their last evaluation in June of 2012, [Hagemeier] reported that medications were helping his mood and anxiety symptoms. In addition, he reported that his mood and anxiety were better, and he was experiencing less anger issues, which w[ere] generally directed at relational problems with his parents. Most significantly, Dr. Piburn noted a GAF score of 55, which indicates only moderate symptoms or moderate difficulty in social, occupational, or school functioning[.] . . . Based on these noted inconsistencies, the undersigned has afforded the opinions little weight.

(Administrative Record at 21.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Piburn. The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Piburn's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2.    *Credibility Determination*

Hagemeier argues that the ALJ failed to properly evaluate his subjective allegations of disability. Hagemeier maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Hagemeier's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ addressed Hagemeier's credibility as follows:

> After careful consideration of the evidence, the undersigned finds that [Hagemeier's] medically determinable impairments could reasonably be expected to cause the alleged symptoms;

17

however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

[Hagemeier] experiences some symptoms and limitations; however, the record does not fully support the severity of [his] allegations. As discussed in full detail above, the objective medical evidence of record failed to support [Hagemeier's] allegations of disabling symptoms and limitations. Contrary to [Hagemeier's] allegations of disability secondary to social anxiety, records indicated that he was able to go to the mall, hang out with friends, complete group therapy, live on his own for a period of time, move in with a friend's family, and even perform part-time work satisfactorily with a group of other participants through Goodwill Industries (Exhibits 5F; 21F; 24E). Furthermore, there w[ere] numerous instances noted throughout the medical record that [Hagemeier] was noncompliant with treatment. More specifically, treating providers indicated that [Hagemeier] discontinued taking numerous medications, was resistant to recommended treatment advice from his psychiatrist, and failed to follow through with vocational rehabilitation and community support secondary to refusing drug testing (Exhibits 5F; 6F; 12F). In addition, the credibility of [Hagemeier's] allegations was further eroded by medical records indicating that he continued abusing illicit substances and was constantly seeking benzodiazepines. Of note, during the consultative examination, [Hagemeier] inconsistently reported his drug abuse history and denied abusing cocaine despite a positive drug screening. Moreover, it was noted that [Hagemeier] was "clearly unmotivated for employment", despite having sufficient memory and intellect for employment (Exhibit 13F).

In addition, [Hagemeier] reported daily activities that are not limited to the extent one would expect considering his allegations of disabling symptoms and limitations. He reported having no difficulties performing personal care tasks independently. In addition, he reported being able to prepare

simple meals on a daily basis, doing occasional household chores such as mowing the lawn or raking leaves[.] . . . While [Hagemeier] reported going outside "rarely", treatment records indicated that he was going to a friend's house daily. In addition, medical records indicated that he was leaving his house in order to avoid conflict with his mother[.] . . . [Hagemeier] reported problems getting along with family, friends, or neighbors, noting that they do not understand his problems. Treatment records indicated [Hagemeier] had difficulties getting along with his parents; however, they failed to reveal any difficulties getting along with other people. Of note, [Hagemeier] successfully went through group treatment, reported living with a friend's family, and was working through Goodwill Industries with a group of other people, being able to interact as needed (Exhibits 7F; 21F; 24E). . . . Based on the foregoing, the undersigned finds that [Hagemeier] retains the capacity to perform work activity consistent with the assessed residual functional capacity above.

(Administrative Record at 22-23.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Hagemeier's treatment history, medical history, functional restrictions, effectiveness of medications, activities of daily living, and work history in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Hagemeier's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Hagemeier's subjective complaints, the Court will not disturb the

ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3.    RFC Assessment

Hagemeier argues that the ALJ's RFC assessment is flawed and not supported by substantial evidence. Specifically, Hagemeier argues that the ALJ failed to consider his ADHD as a severe impairment, and the effect it would have on his RFC. Hagemeier also argues that the ALJ failed to fully and fairly develop the record regarding "illegible" treatment notes from a treating source, Dr. Garrelts. Finally, Hagemeier maintains that the ALJ relied too heavily on the opinions of the non-examining State agency medical consultants for formulating his RFC assessment. Hagemeier concludes that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some

support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ determined that:

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain [Hagemeier's] allegations of disabling symptoms. The consultative examination of [Hagemeier] supports the residual functional capacity as described above. The State agency opinions are internally consistent and consistent with the evidence as a whole. [Hagemeier] does experience some symptoms and limitations but only to the extent described in the residual functional capacity above.

(Administrative Record at 23-24.)

Furthermore, in determining Hagemeier's RFC, the ALJ thoroughly addressed and considered his medical history and treatment for his mental health complaints, including

the opinions of Dr. Garrelts.[7]  Additionally, at various points in his decision, the ALJ refers to Hagemeier's diagnosis and treatment for ADHD.  Moreover, the record demonstrates that Hagemeier was not diagnosed with ADHD until April 2012, and he was successfully treated for it with medication.[8]  Overall, there is very little discussion of ADHD in the record, and there is no indication that it would significantly affect Hagemeier's ability to perform basic work activities.  *See Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) ("An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities.").  Finally, as discussed in sections *IV.B.2*, and contrary to Hagemeier's assertions, the ALJ properly considered the opinions of Hagemeier's subjective allegations in making his overall disability determination, including determining Hagemeier's RFC.  Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Hagemeier's medical records, observations of treating physicians, and Hagemeier's own description of his limitations in making the ALJ's RFC assessment for Hagemeier.[9]  *See Lacroix*, 465 F.3d at 887.  Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record.  *See Cox*, 495 F.3d at 618.  Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record.  *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.  The Court concludes that Hagemeier's

---

[7] *See* Administrative Record at 17-23 (providing a thorough and comprehensive discussion of Hagemeier's overall medical history and treatment); *see id.* at 18-19 (providing a thorough and comprehensive discussion of Dr. Garrelts' opinions).

[8] *Id.* at 540.

[9] *See* Administrative Record at 17-23 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

assertion that the ALJ's RFC assessment is flawed and not supported by substantial evidence is without merit.

## V. CONCLUSION

The Court finds that the ALJ properly considered and weighed the opinion evidence provided by Hagemeier's treating psychiatrist, Dr. Piburn. The Court further finds that the ALJ properly determined Hagemeier's credibility with regard to his subjective complaints of disability. Lastly, the Court also finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this _4th_ day of June, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA